IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHNNY L. CALDERWOOD,JR.,

                Plaintiff,              Case No. 3:04 CV 7765

-vs-

                                                MEMORANDUM OPINION

OMNISOURCE CORPORATION,

                Defendant.

KATZ, J.

This matter is before the Court on the defendant's motions for summary judgment (Doc. 122) and to strike supplemental authority (Doc. 171) and the plaintiff's motion to strike (Doc. 166). This Court has jurisdiction pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332.

**I. Background**

Defendant OmniSource Corporation hired Plaintiff Johnny Calderwood as a truck driver, or commercial motor vehicle (CMV) operator, on December 4, 2000. Throughout his employment at OmniSource and at all relevant times, Calderwood was a union member subject to a collective bargaining agreement with a grievance procedure.

Calderwood received his first conviction for driving under the influence of alcohol (DUI) on January 31, 2002, while employed by OmniSource. He was not terminated.

On July 1, 2003, Calderwood sustained an industrial injury to his left knee in the course of his employment with OmniSource. OmniSource, a self-insured employer for purposes of administering workers' compensation benefits, certified his claim for concussion, ACL tear, and medial meniscus in his left knee. The employer then paid for reconstructive surgery, physical

therapy, and temporary total disability compensation for the period of Calderwood's recovery. After recovery time, OmniSource sought restriction instructions from Dr. Jeffery LaPorte, Calderwood's physician, but was unable to contact him. The employer asked Calderwood to obtain restrictions, which were faxed to OmniSource from Dr. LaPorte on February 26, 2004. Dr. LaPorte's restrictions were: "Sit down work only – indoor only; . . . No bending/stooping/squatting/kneeling; . . . Limit of 20 lb. weight; and . . . No climbing." Def. Ex. Y.

OmniSource supervisors determined that a sorting position met the restrictions. It was indoors, performed while sitting on a stool, required no bending/stooping/squatting/kneeling/climbing, and did not require lifting more than twenty pounds at a time. It did, however, require the use twelve stairs to access the second-floor work station of the assignment.

Calderwood worked from February 27, 2004 until March 2, 2004, when he fell walking down the stairs after his shift. He was taken to a hospital by ambulance. OmniSource amended Calderwood's benefits claim to account for his back injuries resulting from the fall.

As a prerequisite of his employment with OmniSource, Calderwood was required to maintain a valid driver's license and a Class A commercial driver's license (CDL). His employment agreement bound him to notify OmniSource of any revocation or suspension of his license before the end of the business day after the loss of his license. The United States Department of Transportation punishes alcohol-related driving convictions by removing a CDL holder's eligibility to operate a CMV. 49 C.F.R. § 383.51.

As of January 1, 2004, OmniSource revised its "Driver Policy and Improvement Manual" to provide that an employee's DUI or reckless driving conviction would result in immediate disciplinary action, including possible termination.

Calderwood received a second DUI on January 1, 2004, while driving his personal vehicle in Ohio. He pled no contest and was found guilty on April 28, 2004. He served 5 days of an otherwise-suspended 30-day sentence in jail from May 5 to May 10, 2004. His license was suspended for one year. Calderwood did not report the citation and conviction to OmniSource and to the State of Michigan, the state that issued his CDL.

In May of 2004, OmniSource learned of Calderwood's second DUI conviction and incarceration from a newspaper notice. OmniSource determined that Calderwood was disqualified from holding a CDL and therefore from working any longer as a CMV operator. Calderwood indicated that he believed he could still obtain a valid CDL. His supervisors instructed that he report to OmniSource with a valid CDL on May 12, 2004. Calderwood did not report as requested and was terminated effective May 13, 2004 in a letter dated May 14, 2004 and citing his DUIs and ineligibility to obtain a CDL.

Calderwood filed a complaint before the Lucas County Court of Common Pleas, and it was removed to this Court on December 13, 2004. Plaintiff alleges retaliation, intentional employer tort, and public policy tort against Defendant. A related state court case pertaining to Calderwood's disability pay remained in the state court system. On May 9, 2007, the Supreme Court of Ohio awarded Calderwood temporary total disability pay for the period after his termination because he was disabled previous to his termination. *State ex rel. OmniSource Corp. v. Indus. Comm. and Johnny L. Calderwood*, 113 Ohio State 3d. 303 (Ohio 2007). This Court, in

granting summary judgment to Defendant OmniSource, in no way contradicts or disagrees with the Supreme Court's decision.

**II. Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

Plaintiff makes three claims against Defendant: retaliation in violation of Ohio Rev. Code § 4123.90, intentional employer tort, and termination in violation of Ohio public policy.

**A. Retaliatory discharge**

Under Ohio Rev. Code § 4123.90, an employer may not discharge an employee for filing a workers' compensation claim for an injury that occurred during the course of his employment with that employer. Ohio Rev. Code § 4123.90. Section 4123.90 does not, however, preclude

employers from terminating employees for any lawful reason, including inability to do their jobs or absenteeism due to their workplace injury. *White v. Mt. Carmel Med. Ctr.*, 150 Ohio App.3d 316 (Ohio Ct. App. 2002); *cf. Coolidge v. Riverdale Local Sch. Dist.*, 100 Ohio St.3d 141 (Ohio 2003) (holding that employers who fire employees receiving temporary total disability for absenteeism or inability to work may violate Ohio public policy; failing to hold such conduct violates § 4123.90).

When there is no direct evidence showing that an employer terminated an employee specifically for filing a workers' compensation claim, the Court analyzes a § 4123.90 claim under a framework mirroring that of many other employment discrimination claims based on circumstantial evidence. First, the Court must determine whether the employee has made out a prima facie case by showing: (1) that he filed a workers' compensation claim for an injury incurred in the scope of his employment with the employer; (2) that he experienced an adverse employment action; and (3) that there was a causal connection between the filing of the claim and the adverse action. *White*, 150 Ohio App.3d at 328; *see Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir. 1984) (setting out the similar prima facie case for a claim of retaliation under Title VII of the Civil Rights Act of 1964). If the plaintiff meets that burden, the Court must determine whether the employer has articulated a legitimate, non-discriminatory reason for firing him. *Kilbarger v. Anchor Hocking Glass Co.*, 120 Ohio App.3d 332, 697 N.E.2d 1080, 1083 (1997).

Where the defendant sets forth, through the introduction of admissible evidence, that the actions were taken for a legitimate nondiscriminatory reason, it becomes the plaintiff's burden to prove by a preponderance of the evidence that the reason was actually a pretext for discrimination.

To establish pretext, a plaintiff may meet his or her burden by showing that the employer's proffered reason for adverse employment action: (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action. *Id.*; *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Though the burden of production shifts back and forth between employer and employee under this framework, the employee at all times bears the burden of proving the employer acted with retaliatory intent. *Boyd v. Winton Hills Med. & Health Ctr., Inc.*, 133 Ohio App.3d 150, 727 N.E.2d 137, 140 (Ohio Ct. App. 1999).

> The factors that a trier of fact may consider in determining whether there was retaliation include: "punitive action such as bad performance reports after the ... claim was filed, the length of time between the claim and the discharge, changes in salary level, hostile attitudes emerging, and whether legitimate reasons exist for the discharge."

*Boyd v. Winton Hills Med. & Health Ctr., Inc.*, 133 Ohio App.3d 150, 727 N.E.2d 137, 140 (1999) (quoting *Anschutz v. Dresser Indus., Inc.*, No. 3-90-8, 1991 WL 261828, 1991 Ohio App. LEXIS 6124 (Dec. 11, 1991)).

Plaintiff has not made a sufficient showing of direct evidence of retaliation. He argues that certain supervisors knew that placing him in the sorting position would violate his work restrictions because it required "climbing" stairs to get to the sorting area. However, OmniSource has shown that it considered the "climbing" argument and determined that "climbing" did not refer to stairs, but rather referred to climbing ladders or climbing in, out of, on, and off of cars and trucks, some duties of a CMV operator, as part of performing the actual job.

The first two prongs of the plaintiff's prima facie case are evident here. Calderwood filed a workers' compensation claim, with the assistance and agreement of OmniSource, in July of 2003

and likewise amended it in March of 2004 after his fall. He was terminated in May of 2004. OmniSource disputes the causal link between these events. OmniSource argues that it did not terminate Calderwood until a year after his original filing, that it voluntarily paid for his surgeries and rehabilitation, and that it did not contest his claims or benefits until after learning about his second DUI conviction. OmniSource's arguments are flawed. While Calderwood was not terminated until over a year after his initial filing, it was less than three months after his amended filing after his fall down the stairs. That the employer voluntarily paid for his medical expenses is hardly an argument worth noting. The employer was required by law and contract to pay for his injuries. Finally, that his claims were not contested until after his DUI conviction is an argument that could cut either way. It could mean that it was the DUI that alerted the employer to Calderwood's violation of his employment contract, but it could just as easily be an admission that the employer used the DUI to get at, not Calderwood's employment status, but his claim and benefits status. The plaintiff has met his burden to show a prima facie case of retaliation under Ohio Rev. Code § 4123.90.

OmniSource's proffered non-discriminatory reason for firing Calderwood was the second DUI, which OmniSource did not know about until May of 2004, when it asked for an updated license and then, failing to receive one, fired him. Plaintiff alleges that this reason was pretextual. Plaintiff cannot show that the DUI reason had no basis in fact. Nor has Plaintiff shown that a DUI was insufficient reason to terminate an employee or that Calderwood's DUI did not actually motivate the termination. Plaintiff argues that a similarly situated employee was not fired.

To support Plaintiff's arguments, others to whom he compares himself must have been "subject to the same standards and engaged in the same conduct without such differentiating or

8

mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). While Plaintiff does identify an employee who had two DUIs, one of that employee's violations occurred before 2004, like Plaintiff's first DUI, before the company regulations were changed. The second DUI occurred when the employee was a teenager, years before employment with OmniSource. Defendant also has shown that three other OmniSource employees were fired for being convicted of a DUI subsequent to the 2004 policy change.[1] Plaintiff has failed to show pretext. There is no genuine issue of material fact with regard to Plaintiff's retaliatory discharge claim.

### B. Employer Intentional Tort

In *Jones v. VIP Development Co.*, 15 Ohio St.3d 90 (1984), the Ohio Supreme Court defined the employer conduct necessary to establish an intentional tort for which the employer would not be immune as follows: "An intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur."

---

[1] Plaintiff attempts to offer testimony of some of the other "thirty-four" employees who Plaintiff alleges either quit or were fired from OmniSource after filing workers' compensation claims. Such "me too" evidence is relatively unwelcome in this Circuit. *See Schrand v. Federal Pacific Electric Co.*, 851 F.2d 152, 156-57 (6th Cir. 1988) (age discrimination case, holding that even if "me too" evidence were relevant, admitting it would violate Rule 403 of the Federal Rules of Evidence because the probative value of such evidence is "substantially outweighed by the danger of unfair prejudice flowing from its admission"). Plaintiff has not shown that the evidence in this case overcomes the reasons for inadmissibility articulated in *Schrand*, namely that the same actors, reasons, and other circumstances were involved. *See also Williams v. The Nashville Network*, 132 F.3d 1123, 1130 (6th Cir. 1997); *Neal v. Hamilton County*, 87 Ohio App.3d 670, 680 (Ohio Ct. App. 1993). None of these other OmniSource employees received DUI convictions.
    Plaintiff also offers statistics claiming to show that employees who file workers' compensation claims are more likely to leave employment than not, and Defendant offers statistics to show the opposite. The Court need not decide between these sets of statistics, as in either case they are irrelevant to proving anything with regard to the claims filed by this particular plaintiff.

*Id.*, syllabus ¶ 1.  In *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100 (1988), the Ohio Supreme Court expanded on the meaning of "substantial certainty."  The court stated that:

> Subsequent to the majority of this court's determining in *Jones* that an intentional tort should be measured by the yard stick of 'substantially certain to occur,' trial courts have been led to misconstrue such phrase, transforming negligence cases into intentional tort cases. Claims in a number of cases have been based upon injuries caused by some degree of negligence on the part of the employer. These have ranged from simple negligence to reckless and wanton disregard of the duty to protect the health and safety of employees, none of which presents an act which is substantially certain to occasion injury.

*Id.* at 115.  The court adopted a test for intentional tort by an employer in *Fyffe v. Jeno's, Inc*., 59 Ohio St.3d 115 (1991).[2]

> Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed. 1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against an employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph 5 of the syllabus, modified as set forth above and explained.)

---

[2] As noted in *Medlen v. Meyers*, 476 F.Supp.2d 797, 801 n.2 (N.D. Ohio 2007):
> After the decision in *Fyffe*, the Ohio General Assembly enacted O.R.C. § 2745.01 to abrogate the standard announced in *Fyffe*. The Ohio Supreme Court held § 2745.01 was "unconstitutional in its entirety." *Johnson v. BP Chems., Inc*., 85 Ohio St.3d 298, 308, 707 N.E.2d 1107 (1999). The General Assembly then enacted a revised version of § 2745.01 effective April 7, 2005. Because the statute was not effective on \*\*\* the date of the [underlying incident], the *Fyffe* standard is applicable.

*Fyffe*, supra, syllabus ¶ 1. The "knowledge" referred to in *Fyffe* is "actual knowledge," *see, e.g., Lucas v. RCA Rubber Co.*, 93 Ohio App.3d 389, 391 (1994) and *Cross v. Hydracrete Pumping Co.*, 133 Ohio App.3d 501, 507 (1999), and must be supported by competent evidence, *Youngblood v. Whirlpool Corp.*, 99 Ohio App.3d 740, 747 (1994).

Calderwood alleges that OmniSource knew that if Calderwood were subjected to the staircase that led to the sorting workspace, which it required him to use to access the workspace, the injuries he sustained on March 2, 2004 were substantially certain to occur. The only potentially admissible and relevant evidence that Plaintiff advances are two alleged admissions by OmniSource supervisors that the sorting job exceeded the plaintiff's medical restrictions. This admission is corroborated only by Calderwood's own testimony at deposition. OmniSource supervisors testified that they examined the "no climbing" restriction and determined that it did not prohibit the use of stairs to access or exit a workspace, only that it prohibited actual work activities that required climbing, which many positions do. Dr. LaPorte recognized the potentially differing interpretations of "climbing," but acknowledged that, although he had in other instances noted "no stairs" in addition to "no climbing" on his medical restriction sheets, he did not do so with regard to Calderwood. That OmniSouce assigned Calderwood a sorting position, which required no climbing, in a workspace at the top of a set of stairs alone cannot meet the burden required by *Fyffe*.

### C. Public Policy Tort

In order to establish a cause of action for public policy tort, a plaintiff must show:

1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the "clarity" element)

11

> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the "jeopardy" element)
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the "causation" element)
>
> 4. The employer lacked overriding legitimate business justification for the dismissal (the "overriding justification" element).

*Simmons v. Wal-Mart Assocs., Inc.*, 2005 U.S. Dist. LEXIS 21772 (N.D. Ohio 2005) (citing *Collins v. Rizkana*, 73 Ohio St. 3d 65, 1995 Ohio 135, 652 N.E.2d 653, 657-658 (Ohio 1995)); *see also Greeley v. Miami Valley Maint. Contractors, Inc*., 49 Ohio St. 3d 228, 551 N.E.2d 981 (Ohio 1990).

Ohio's cause of action for termination in violation of public policy, in general, applies to at-will employment, and not to employment governed by a union-backed CBA. *Haynes v. Zoological Society of Cincinnati*, 73 Ohio St.3d 254, 652 N.E.2d 948 (Ohio 1995). Plaintiff is a union member, but asks this Court to extend the state public policy tort to his circumstances. In other instances, the Court has not extended the at-will public policy exception to employees who are members of unions with grievance procedures. *Bradshaw v. Goodyear Tire & Rubber Co.*, 485 F.Supp.2d 821, 830 (N.D. Ohio 2007); *Lawrence v. Dixon Ticonderoga Co.*, 305 F.Supp.2d 806, 811-12 n. 1 (N.D.Ohio 2004).

Plaintiff urges this Court to find an exception to *Haynes* for purposes of the Ohio Workers' Compensation Act. In *Coolidge v. Riverdale Loc. School Dist.*, 100 Ohio St.3d 141 (Ohio 2003), the Ohio Supreme Court allowed a teacher who was not an at-will employee to state a public policy tort claim. In *Memmer v. Indalex, Inc.*, 2006 U.S. Dist. LEXIS 20140 (N.D. Ohio 2006), a court in this District distinguished *Coolidge* as applying only to non-at-will employees who are not members of a union with a grievance procedure. In *Kusens v. Pascal Co., Inc.*, 448 F.3d 349,

365-66 (6th Cir. 2006), the Sixth Circuit acknowledged that *Coolidge* created an exception to the at-will doctrine for public policy tort in the workers' compensation context. In holding "that *Coolidge* creates an independent public-policy exception to the employment-at-will doctrine," Ohio's Third District Court of Appeals noted that:

> A number of federal district courts have interpreted Coolidge as creating an additional public-policy exception to the employment-at-will doctrine. *See Hall v. ITT Automotive* (N.D.Ohio 2005), 362 F.Supp.2d 952, 962; *Simmons v. Wal-Mart Assoc., Inc.* (July 19, 2005), S.D.Ohio No. 2:04- CV-51, 2005 WL 1684002; *Welty v. Honda of Am. Mfg., Inc*. (S.D.Ohio 2005), 411 F.Supp.2d 824; *Salyer v. Honda of Am. Mfg., Inc*. (Sept. 23, 2005), S.D.Ohio No. 2:04-CV-988, 2005 WL 2338786. To the contrary, the Sixth Circuit Court of Appeals has held that an employee's proper recourse for an alleged retaliatory discharge for filing a workers' compensation claim was to bring a cause of action under the statute, not a public-policy claim. *Kusens v. Pascal Co.* (C.A.6, 2006), 448 F.3d 349, 365; *Jakischa v. Cent. Parcel Express* (C.A.6, 2004), 106 Fed.Appx. 436.
>
> In Ohio appellate courts, there is a split in the interpretation of *Coolidge*. The Eighth District has rejected the notion that Coolidge creates a public-policy exception to the employment-at-will doctrine, holding instead that Coolidge merely "expanded the type of action that constitutes retaliation under R.C. 4123.90 to include termination for absenteeism while on TTD," *Brooks v. Qualchoice, Inc.*, 8th Dist. No. 85692, 2005-Ohio-5136, 2005 WL 2386479, at ¶ 11; see, also, *Urban v. Osborn Mfg., Inc*., 165 Ohio App.3d 673, 2006-Ohio-1080, 847 N.E.2d 1272, at ¶ 12. However, the First District specifically rejected the Eighth District's interpretation and held that Coolidge created a public-policy exception to the employment-at-will doctrine. *Bickers v. W.S. Life Ins. Co., Inc*., 1st Dist. No. C-040342, 2006-Ohio-572, 2006 WL 305442.

*Id.* at 292-93.

This Court, ultimately, finds it satisfactory merely to note the lack of clarity on this point of law. It is not necessary to decide the specific issue because the Court finds that, even if the exception applies and Plaintiff's claim is not precluded, Plaintiff has failed to establish a case of public policy tort.

> To establish a claim for wrongful discharge in violation of public policy, plaintiff must show (1) that a clear public policy existed and was manifested in a state or

13

> federal constitution, statute or administrative regulation, or in the common law; (2) that dismissing employees under circumstances like those involved in plaintiff's dismissal would jeopardize the public policy; (3) that plaintiff's dismissal was motivated by conduct related to the public policy; and (4) that CCC lacked overriding legitimate business justification for the dismissal. *Painter v. Graley* (1994), 70 Ohio St.3d 377, 384, 639 N.E.2d 51.

*Ekstrom v. Cuyahoga Cty. Community College*, 150 Ohio App.3d 169, 183 (Ohio Ct. App. 2002).

Some courts have held that when a plaintiff fails to present evidence sufficient to withstand summary judgment on his statutory claims, his corresponding public policy claim must also fail. *Id.*; *see also Mendlovic v. Life Line Screening of Am., Ltd.*, 2007 WL 2671276 (Ohio Ct. App. 2007). This Court finds support for such a conclusion in interpreting the clarity and jeopardy elements. Even if § 4123.90 provides a clear public policy against firing individuals for filing workers' compensation claims, the jeopardy element is only met if such policy is jeopardized in the particular case before a court. This appears to be a lower standard than that applied in a summary judgment review of a retaliation claim, so it may be the case that while a plaintiff cannot show a lack of genuine issues of material fact with regard to his dismissal, he can still show that the public policy against retaliation is jeopardized by his dismissal. However, in this case, Plaintiff Calderwood can show neither. As discussed above, there is sufficient evidence to show that he was fired for receiving a DUI conviction and violating the employer's policies. There was insufficient evidence that he was terminated due to his filing of a workers' compensation claim. Although he did file a workers' compensation claim, his dismissal did not jeopardize Ohio's public policy against retaliation, because he was fired for the DUI and for not having a CDL – not for filing the claim. Neither would jeopardize Ohio's public policy.

**IV. Conclusion**

For the reasons stated herein, Defendant OmniSource's motion for summary judgment (Doc. 122) is hereby granted. The motions to strike (Doc. 166, 171) are hereby denied as moot. Case dismissed.

IT IS SO ORDERED.

                                               s/ *David A. Katz*
                                               DAVID A. KATZ
                                               U. S. DISTRICT JUDGE